Filed 12/17/20  In re B.T. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re B.T., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>P.T.,<br><br>Defendant and Appellant. | F081437<br><br>(Super. Ct. No. JVDP-19-000158)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

S. Lynne Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P.J., Franson, J. and Peña, J.

We review for the third time dependency proceedings that began in the juvenile dependency court in April 2019 regarding P.T. (mother) and her four minor children. In May 2020, we denied extraordinary writ petitions seeking relief from the court's orders terminating her reunification services for the three older children and denying her reunification services for her youngest son, B.T.,[1] and setting a Welfare and Institutions Code section 366.26 hearing.[2]

On this appeal, mother challenges the juvenile court's order terminating her parental rights (§ 366.26) to now one-year-old B.T. After reviewing the juvenile court record, mother's court-appointed counsel informed this court she could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H*. (2009) 47 Cal.4th 835, 844.)

Mother filed a letter but failed to address the termination findings or orders or set forth a good cause showing that any arguable issue of reversible error arose from the section 366.26 hearing. (*In re Phoenix H*., *supra*, 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## PROCEDURAL AND FACTUAL SUMMARY

B.T. was removed from mother's custody at birth in July 2019 by the Stanislaus County Community Services Agency (agency) while she was receiving reunification services for his seven-, three- and one-year-old siblings (the siblings). B.T. and his siblings are the product of an incestuous 10-year relationship between mother and her father, M.T. (father). Father also had an open dependency case arising from allegations

---

[1] *P.T. v. Superior Court* (May 22, 2020, F080715) [nonpub. opn.] and *P.T. v. Superior Court* (May 22, 2020, F080782) [nonpub. opn.]. On our own motion, we take judicial notice of our case files and opinions in case Nos. F080715 and F080782. (Evid. Code, §§ 452, subd. (d), 459, subds. (a)–(c).)

[2] Statutory references are to the Welfare and Institutions Code.

he sexually molested his then 16-year-old son, J.T. J.T. was placed in a group home and father was denied reunification services.

Mother and father share a rare chromosomal defect, which was passed on to several of the children, including B.T. The genetic disorder results in developmental delay as well as other complications. Father was diagnosed with paranoid schizophrenia and mother with dependent personality disorder and intellectual deficiency. B.T. was placed in foster care.

The siblings were removed in April 2019 after the agency received a report of unsafe and unsanitary conditions at mother's home. The house smelled of animal urine and feces and there was a significant amount of trash in the living area. The siblings appeared thin and malnourished. The middle sibling, then two years old, was not able to sit up, hold his head up, crawl or hold a bottle. He was diagnosed with global developmental delay. The juvenile court adjudged the siblings dependents and ordered reunification services for mother only. At a contested six-month review hearing in January 2020, the court terminated mother's reunification services and set a May 2020 section 366.26 hearing.

Meanwhile, mother gave birth to B.T. in July 2019 and a child welfare case was opened for him. Mother claimed she was no longer in a relationship with father. She regularly participated in services to reunify with the siblings and was cooperative with the agency. However, she was either unable or unwilling to acknowledge the children's special needs, raising questions about her protective capacity.

The agency filed a dependency petition on B.T.'s behalf under section 300, subdivisions (b)(1) and (j), alleging he was the product of an incestuous relationship between mother and father. The petition included additional allegations concerning the circumstances of the siblings' case, father's mental illness, allegations made by J.T., mother's brother, that father sexually molested him, allegations made by mother's then

3

seven-year-old son that his parents taught him to masturbate and watched him do it, and mother's steadfast refusal to believe her brother and son were sexually abused.

Mother's attorney requested at the detention hearing that B.T. be released from the hospital to mother's custody because she severed all ties with father and was fully engaged in her services. The juvenile court declined to place B.T. with mother but ordered the agency to assess her for placement if she handled B.T. well during supervised visits. The court issued a restraining order against father. Mother understood B.T. would not be returned to her if she violated the order.

In August 2019, the agency amended the petition by adding additional allegations under subdivision (b)(1). Specifically, the agency alleged that mother remained adamant father did not sexually abuse J.T. despite the juvenile court's finding that he did. Mother was also adamant the seven-year-old was not sexually abused despite his focus on sexual and violent topics. The seven-year-old talked about wanting to kill people and asked children at school, " '[W]ho wants to talk about sex?' " He drew pictures of mother and father having sex, naked body parts, guns, and other violent themes concerning sex. In addition, the seven-year-old frequently masturbated in the caregiver's home. Mother remained ignorant of B.T.'s developmental delay and offered other reasons to explain it such as a mishap during delivery. She justified his difficulty breathing as normal for a premature baby even though he was not born prematurely.

The agency recommended the juvenile court order mother to participate in a psychological evaluation with Dr. Cheryl Carmichael. In her psychological evaluation issued in September 2019, Dr. Carmichael opined mother was incapable of safely parenting the children and there were no modifications that could be made to her case plan to enhance her ability to reunify.

Meanwhile, B.T.'s developmental delay was becoming more pronounced. He was struggling to hold his head up and was not making eye contact or tracking. During an evaluation in October 2019, he was assessed at one month for locomotion development

4

and two months for reflex development. He measured a gross motor quotient of 1.33 months, indicating a 56 percent delay. He had hypotonia (low muscle tone) in his trunk and neck muscles. On October 28, a cardiologist found he had an atrial septal defect which had to be monitored every six months. If the defect did not resolve on its own, the cardiologist planned to repair it when he was four or five years old.

At hearings in October and November 2019, the juvenile court appointed mother a guardian ad litem (GAL), sustained the amended petition and ordered mother to complete a second psychological evaluation with Dr. Edward Moles. The court set the dispositional hearing for January 30, 2020. Father absented himself from those and all subsequent hearings.

Dr. Moles issued his report in December 2019, concluding mother had a chronic mental incapacity—a dependent personality disorder and intellectual deficiency—and opined that she was unable to benefit from reunification services.

In an addendum report for the dispositional hearing, the agency recommended the juvenile court deny mother reunification services under section 361.5, subdivision (b)(2) based on the opinions of Drs. Carmichael and Moles that she could not benefit from services. The agency recommended the court deny father reunification services under section 361.5, subdivision (a) because it would not benefit B.T.

On February 10, 2020, mother appeared with her attorney and GAL at the contested dispositional hearing regarding B.T. She testified she did not agree with the opinions of Drs. Carmichael and Moles. She believed they worked for the agency and their opinions were not valid. She continued to participate in services and believed she benefitted from them. She discussed having children with her father in her group sessions and realized it was not a "wise choice." She understood B.T. was developmentally delayed because of her incestuous relationship with father. She wanted the court to allow her to complete a third psychological evaluation to prove she could take care of the children.

The juvenile court found it would be detrimental to return B.T. to mother's custody and denied her reunification services as recommended. The court based its ruling on the psychological evaluations but also expressed concern that mother did not interact very much with B.T. during visitation, such as talking to him. She also held him without supporting his neck, knowing that he was unable to support his head, and handled him roughly. The court was also concerned that mother maintained contact with father and denied it. The court set the section 366.26 hearing for June 9, 2020.

The agency recommended the juvenile court terminate parental rights and establish adoption as B.T.'s permanent plan. Although B.T.'s genetic disorder was likely to severely impact his health and development, his foster parents were aware of his condition and wanted to adopt him. Mother minimized the severe ramifications of having children with her father. She believed the children were fine in her care and believed she was being discriminated against because of her lifestyle. She also maintained her relationship with father. In February 2020, the police responded to an incident involving father and mother. Father admitted to the incestuous relationship with mother and said they had been living together for the prior six months.

On June 9, 2020, mother's attorney read into the record mother's offer of proof that she and B.T. had a parent-child bond and that terminating her parental rights would cause him psychological problems. She could meet all his needs, including physical therapy, if he were returned to her custody. She asserted it would be in B.T.'s best interest to allow her to retain her parental rights and bond with him. Her offer of proof was accepted.

The juvenile court construed mother's offer of proof as an argument the beneficial parent-child exception to adoption applied. The court, however, found it inapplicable because although mother regularly and consistently visited B.T., she failed to show that preserving her relationship with him overrode the benefit he would attain through an

6

adoptive home. The court found B.T. was likely to be adopted and terminated parental rights.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

At a termination hearing, the juvenile court's focus is on whether it is likely the child will be adopted and if so, the court is required to order termination of parental rights. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) If, as in this case, the child is likely to be adopted, the juvenile court must terminate parental rights unless the parent proves there is a compelling reason for finding that termination would be detrimental to the child under any of the circumstances listed in section 366.26, subdivision (c)(1)(B).

Mother attempted to establish that termination of her parental rights would be detrimental to B.T. She did so by invoking the beneficial parent-child relationship exception to adoption, which states, "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) The juvenile court, however, was not persuaded and declined to apply the exception.

Mother does not argue in her letter the juvenile court erred in terminating her parental rights. Instead, she contends she was never given a fair chance, she was mistreated by her peers in her parenting class, the social worker did not communicate with her, and there was no reason not to return B.T. to her custody because she changed her lifestyle. She also contends her due process right was violated. Having failed to raise any arguable issues from the termination hearing in her letter, however, we conclude there is no good cause to merit additional briefing. Further, though we are not required to

7

do so, we have reviewed the record as it relates to the termination hearing and have found no arguable issues.  Consequently, we dismiss the appeal.

## DISPOSITION

The appeal is dismissed.